Exhibit 1



**Gustavo F. Bruckner**
Partner

May 14, 2020

## VIA Federal Express Overnight

Board of Directors
Six Flags Entertainment Corporation
c/o Laura W. Doerre, Executive Vice President, General Counsel
924 Avenue J East
Grand Prairie, TX 75050

### Re: *Demand to Inspect Books and Records Pursuant to 8 Del. C. § 220*

To the Members of the Board of Directors of Six Flags Entertainment Corporation:

This letter serves as a stockholders' demand (the "Demand") for inspection of books and records pursuant to Delaware General Corporation Law, 8 *Del. C.* § 220 ("Section 220"). The law firms of Pomerantz LLP and Shuman, Glenn & Stecker represent Antonio Dela Cruz, Kathleen Friedhoff, and Kenny Rama (the "Stockholders"), the stockholders of Six Flags Entertainment Corporation ("Six Flags" or the "Company").[1] The Stockholders currently own shares of Six Flags common stock, which the Stockholders have held at all relevant times. A true and correct copy of the Stockholders' open holdings statements demonstrating the Stockholders' ownership of Six Flags stock are attached hereto as **Exhibit A**. The Stockholders have appointed the undersigned counsel as the Stockholders' attorneys-in-fact for the purposes of this demand by the Special Powers of Attorney attached hereto as **Exhibit B**. Also, enclosed as **Exhibit C** are verifications on behalf of the Stockholders confirming that the statements in this letter are true and correct to the best of the Stockholders' knowledge, information, and belief.

As set forth below, this Demand is related to potential breaches of fiduciary duties by current and/or former members of the Company's Board of Directors (the "Board") and its senior management team. The Stockholders hereby demand, pursuant to Section 220, the right (by the Stockholders' attorneys, consultants, or other agents), during the usual hours of business, to inspect and make copies of the books and records of the Company described below. The Demand is based on, among other things, the following.

---

[1]     The terms "Six Flags" and the "Company" include all Six Flags employees and directors, as well as all affiliates, joint ventures, and subsidiaries.

gfbruckner@pomlaw.com

600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com

NEW YORK         CHICAGO         LOS ANGELES         PARIS



## I. Background

### A. The Company's Agreement with Riverside and Efforts to Expand in China

Six Flags is a Delaware corporation which maintains its corporate headquarters in Grand Prairie, Texas. According to its public filings, Six Flags is "the world's largest regional theme park company and the largest operator of waterparks in North America, with $1.5 billion in revenue and 26 parks across the United States, Mexico and Canada."

In June 2014, Six Flags entered into an agreement (the "Riverside Agreement") with Riverside Investment Group Co. Ltd. ("Riverside"), a Chinese real estate developer, to build multiple Six Flags-branded theme parks in China. Under the terms of the Riverside Agreement, Riverside would provide the capital investment for future developments in China and would pay Six Flags consulting fees during the development period of each park and then licensing and management fees once the parks opened.

Beginning in April 2018, however, under the direction of management and the Board, Six Flags issued a series of materially false and misleading public statements about the purported success of its international expansion efforts, particularly in China, and the Company's resulting future growth prospects. Specifically, these public statements misrepresented and failed to disclose that: (i) Riverside faced far more financial distress than was disclosed to Six Flags shareholders; (ii) as a result, there was a significant risk and a high likelihood that Riverside would default on its payment obligations under the Riverside Agreement to Six Flags; (iii) Six Flags' international strategy, which relied predominantly on Riverside to develop Six Flags-branded parks in China to drive revenue growth, was significantly less promising than was represented publicly; and (iv) as a result, statements about Six Flags' business, operations and future prospects lacked a reasonable basis when made. At the same time that these false and misleading statements were issued, the Board caused Six Flags to expend Company (*i.e.*, shareholders') money to repurchase 1.8 million of its own shares at artificially inflated prices.

### B. False and Misleading Statements

On April 25, 2018, during the Company's first quarter 2018 earnings conference call, Six Flags' then-Chief Executive Officer ("CEO"), James Reid-Anderson ("Mr. Reid-Anderson"),[2] described the opportunity to expand international agreements revenue, stating "China is the biggest of all, and the vision of both Six Flags and Riverside is to build multiple parks."

---

[2]    Mr. Reid-Anderson served as a member of the Board from August 2010 until November 2019, and as CEO of the Company from August 2010 through February 2016, and from July 2017 until November 2019.

# POMERANTZ LLP

On July 25, 2018, Six Flags issued an earnings press release concerning its business, including its second quarter 2018 ("2Q18") financial results. The 2Q18 10-Q also announced significant new business, stating that "on May 29, 2018, the company and its partner in China, the Riverside Group, announced a licensing agreement to develop a Six Flags Kids World, the fourth park in the Nanjing entertainment complex and the eleventh park in China." The Kids World waterpark and adventure park was scheduled to open in 2021 with the theme park scheduled to open in 2022.

On July 25, 2018, Six Flags also hosted a conference call for shareholders and analysts. During the call, Mr. Reid-Anderson represented that "[o]ur international licensing program is growing exponentially and providing additional diversification to our portfolio, and the opportunity for future growth remains very compelling" and that the "timing of the [China] parks remains exactly the same as previously disclosed, there's no change on any of those." The Company's then-Chief Financial Officer ("CFO"), Marshall Barber ("Mr. Barber")[3] confirmed that Six Flags had also repurchased $81 million of its common stock during the quarter.

On October 24, 2018, Six Flags hosted a conference call for shareholders and market analysts. During the call, Mr. Reid-Anderson announced a delay in the opening dates for the Company's new Chinese parks from earlier statements of late 2019 to 2020 and into 2022, but stated that this was only a matter of a few months' difference from earlier announcements.

On February 14, 2019, Six Flags issued an earnings release concerning its business, including its fourth quarter and fiscal year 2018 ("FY18") financial results. This release touted record revenues, but also announced that "growth was offset by an unfavorable revenue adjustment of $15 million related to the company's international agreements due to delays in the expected opening dates of some of the parks in China caused by a challenging macroeconomic environment." The Company also announced the repurchase of an additional $111 million in Six Flag's stock. That same day, Mr. Reid-Anderson participated in a conference call for shareholders and analysts, during which he represented that revenues would have been higher "if not for our fourth quarter adjustment to reflect delays in some of the China parks' opening schedules caused by recent macroeconomic events that many companies are experiencing and from which our partner is not immune." He also announced that "we now expect our high-end parks to begin opening in mid- to late 2020 versus 2019, our Chongqing parks to begin opening in mid- to late 2021 versus 2020, and Nanjing to begin opening in late 2022."

On April 23, 2019, Six Flags issued an earnings release concerning its business, including its first quarter 2019 ("1Q19") financial results. The following day, Six Flags hosted a conference

---

[3]     Mr. Barber served as Executive Vice President and CFO of the Company from February 2016 until February 24, 2020, when the Company announced his retirement. Mr. Barber's effective retirement date is August 31, 2020.



call for shareholders and market analysts during which Mr. Reid-Anderson discussed the quarter's results. When asked directly about whether the China parks were "on track for approval," he stated: "There are no delays that we're aware of on any of the parks. The same timing as we outlined on the fourth quarter call."

On July 24, 2019, Six Flags issued an earnings release concerning its business, including its second quarter 2019 ("2Q19") financial results. The release quoted Mr. Reid-Anderson as saying, "I am confident 2019 will be the tenth consecutive record year for our shareholders as we continue to innovate and deliver on our five-pillar strategy to drive our business toward achieving our aspirational goal of $750 million of Modified EBITDA by 2021."

On October 23, 2019, Six Flags filed with the SEC its 3Q19 quarterly report on Form 10-Q for the period ended September 30, 2019. Also, on October 23, 2019, Six Flags hosted a conference call for Six Flags shareholders and market analysts wherein Mr. Reid-Anderson responded to questions. During the call, Mr. Reid-Anderson stated that "the Chinese market remains difficult, and we are likely to continue to recognize lumpy international agreements revenue until we see progress there from a macroeconomic, real estate and trade perspective." As a result, the Company revealed that it would again postpone its park openings in China, with Mr. Reid-Anderson stating that "there's a very high likelihood going forward that we will see changes in the timing of park openings" and "it's unrealistic to think it's going to be exactly as we've outlined." The Company further revealed that it was continuing to suspend revenue recognition related to four of its Chinese parks in development.

On this news, the trading price of Six Flags common stock fell from $51.23 per share on October 22, 2019 to $44.88 per share on October 23, 2019, or approximately 12%, wiping out $536 million in shareholder equity.

## C.     Analysts Begin Questioning the Viability of Riverside and the Truth Emerges

As 2019 continued to unfold, reports questioning the financial viability of Riverside emerged. For example, on December 8, 2019, Riverside posted a statement on its Chinese website acknowledging its financial difficulties during 2019. A month later, on January 6, 2020, Wedbush Securities issued an analyst report detailing Riverside's financial difficulties, which stated:

### Six Flags' Chinese Partner Facing More Financial Pressure

Recent reports from various Chinese press outlets indicate that the Riverside Group, SIX's exclusive partner in China, is facing capital constraints. The reports suggest Riverside has fallen behind on payments to its lenders and contractors leading to multiple lawsuits against the Chinese developer and its subsidiaries.



One such contractor, Aofei Entertainment, who is in charge of developing promotional material for the Chinese Six Flags parks in Zhejiang has taken Riverside to court seven times already due to non-payment. Another contractor who developed one of the play areas at Zhejiang alleges they have not been paid for over six months. These contractors and others have successfully lobbied Chinese courts to institute an equity freeze on Riverside and its subsidiaries while their respective lawsuits await trial.

In addition, Riverside has recently undergone large scale layoffs. A statement from the company stated that due to a depressed real estate market in the country, the company's developments have encountered "bottlenecks". This has necessitated layoffs to hundreds of Riverside employees or up to 90% of its workforce according to Chinese media sources. Some of these former employees have reported that they have yet to receive full payment from Riverside for prior work.

Chinese reporters recently visited the Zhejiang park construction site and claimed that the development had been abandoned with no signs of ongoing construction. We note the Zhejiang park was the first Chinese park announced by Six Flags back in 2018 (2 years earlier than Chongqing and almost 3 years before Nanjing). Theoretically Zhejiang should be the furthest developed at this point, and if the reports are to be believed this is certainly a troubling signal for the two other projects.

Unable to conceal the truth any longer, on January 20, 2020, Six Flags filed a current report with the SEC on Form 8-K, which stated:

The development of the Six Flags-branded parks in China has encountered continued challenges and has not progressed as Six Flags Entertainment Corporation (the "Company") had expected. The Company's partner in China, Riverside Investment Group ("Riverside"), continues to face severe challenges due to the macroeconomic environment and the declining real estate market in China. This has led Riverside to default on its payment obligations to the Company and, as such, the Company has delivered formal notices of default under its agreements. While the Company continues to work with Riverside and each of Riverside's governmental partners, the eventual outcome is unknown and could range from the continuation of one or more projects to the termination of all the Six Flags-branded projects in China.

In the fourth quarter of 2019, the Company will realize no revenue from the China international agreements and expects a negative $1 million revenue adjustment

### Page 5

POMERANTZ LLP

> related to the China international agreements that will offset a portion of the revenue from the Company's remaining international agreements. In addition, the Company expects aggregate one-time charges of approximately $10 million related to the China international agreements and certain unrelated litigation matters in the fourth quarter. For 2020, while the Company does not foresee any significant additional one-time costs or expenses irrespective of the outcome of the Six Flags-branded projects in China, the loss of all the China projects would result in no revenue for that market if Riverside does not cure the default and the Company is not able to engage other partners to complete any of the projects.

On this news, the trading price of Six Flags common stock collapsed again, falling from $43.76 per share on January 9, 2020 to close at $35.96 per share on January 10, 2020, or nearly 18%, wiping out $660 million in shareholder equity.

On February 20, 2020, Six Flags issued an earnings release concerning its business, including its fourth quarter and fiscal year 2019 financial results, which stated that "during 2019, the company's partner in China defaulted on its payment obligations to the company. As a result, in February 2020 the company terminated the development agreements. It is unlikely that the company will recognize any revenue or income in 2020 related to the development of parks in China."

On this news, the trading price of Six Flags common stock collapsed again, falling from $38.02 per share on February 19, 2020 to $31.89 per share on February 20, 2020, or approximately 16%, wiping out an additional $518 million in shareholder equity.

## II. The Stockholders' Proper Purposes

Under these circumstances, it is reasonable for Six Flags stockholders to utilize 8 Del. C. §220 to investigate whether the Company's senior officers and directors have fulfilled their fiduciary duties. Based on the foregoing, the Stockholders make this § 220 demand for the proper purposes of:

(a) investigating mismanagement or wrongdoing and breach of fiduciary duties of loyalty, good faith and due care on the part of Six Flags' officers and directors with respect to the above-described matters;

(b) investigating the disinterestedness and independent ability of the Board to consider a demand to initiate and maintain litigation related to any breaches of fiduciary duties as detailed above, and determining whether it is necessary to institute class or derivative litigation to remedy such breaches of fiduciary duties; and

600 Third Avenue, New York, New York 10016 tel: 212.661.1100 www.pomerantzlaw.com

NEW YORK CHICAGO LOS ANGELES PARIS

# POMERANTZLLP

(c)     determining whether the current directors are fit to continue serving on the Board.

This demand to inspect the Company's books and records is undertaken in good faith and pertains to the Stockholders' interest in reviewing the manner in which Six Flags is being managed. The Delaware Court of Chancery has consistently found similar shareholders' demands to inspect a corporation's books and records for reasons such as this one to be proper. *See, e.g., Melzer v. CNET Networks, Inc.*, 934 A.2d 912 (Del. Ch. 2007) ("There is no shortage of proper purposes under Delaware law, but perhaps the most common proper purpose is the desire to investigate potential corporate mismanagement, wrongdoing, or waste.") (internal quotation marks and citations omitted); *Grimes v. DSC Communications Corp.*, 724 A.2d 561 (Del. Ch. 1998). The Stockholders are entitled to inspect all necessary books and records to satisfy these stated purposes. *See generally Wal-Mart Stores, Inc. v. Indiana Electrical Workers Pension Trust Fund IBEW*, 95 A.3d 1264, 1271 (Del. 2014). The below demands are necessary and essential to effectuate the Stockholders' purposes.

## III.    The Books and Records Requested

The Stockholders hereby demand, under oath, pursuant to Section 220, the right (by the Stockholders' attorneys, consultants, or other agents), during the usual hours of business, to inspect and make copies of the books and records of the Company described below. Unless otherwise indicated, this Demand pertains to books and records from January 1, 2017 through the date of production:[4]

1.    All minutes or Board books, reports, handouts, emails, and other materials provided or sent to the members of the Board, or any subcommittees thereof, concerning the status of the Company's international expansion efforts;

2.    All minutes or Board books, reports, handouts, emails, and other materials provided or sent to the members of the Board, or any subcommittees thereof, concerning the development of Six Flags branded parks in China;

3.    All minutes or Board books, reports, handouts, emails, and other materials provided or sent to the members of the Board, or any subcommittees thereof, concerning the Riverside Agreement;

4.    All minutes or Board books, reports, handouts, emails, and other materials provided or sent to the members of the Board, or any subcommittees thereof, regarding the financial condition and/or viability of Riverside;

---

[4]    To be clear, the Stockholders seek to investigate *non-exculpated* corporate misconduct.

600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com

NEW YORK     CHICAGO     LOS ANGELES     PARIS

# POMERANTZ LLP

5.   All minutes or Board books, reports, handouts, emails, and other materials provided or sent to the members of the Board, or any subcommittees thereof, regarding the possibility of Riverside defaulting on its payment obligations to the Company;

6.   All minutes or Board books, reports, handouts, emails, and other materials provided or sent to the members of the Board, or any subcommittees thereof, regarding the macroeconomic environment in China;

7.   All minutes or Board books, reports, handouts, emails, and other materials provided or sent to the members of the Board, or any subcommittees thereof, regarding the state of the real estate market in China;

8.   All communications between the Company and Riverside;

9.   All documents which have any bearing on the independence and disinterestedness, or lack thereof for purposes of futility of demand under Delaware law for any current member of the Board, including but not limited to, all documents reflecting any personal, business or familial relationships among any directors;

10.   The personnel file for each member of the Board, including any materials relating to the initial nomination, and any subsequent renomination, of each of the current members of the Board;

11.   All documents produced to any other stockholder or their counsel in response to a demand pursuant to Section 220 or in connection with any stockholder litigation that relates to the allegations contained herein;

12.   All documents created, modified or provided to the Board or any committee thereof concerning the independence or non-independence of any director, including any disclosure questionnaires and any books and records relating to appointment of directors to serve on any committee of the Board; and

13.   All director questionnaires for members of the current Board submitted to NYSE, or prepared internally within Six Flags for any purpose, relating to director independence.

To the extent the Board maintains any or all of its records in electronic form, including but not limited to e-mails and other electronic documents, such as text messages between Board members, such electronic documents are responsive to the above demands and should be produced. Please confirm whether the Board maintains any or all of its records in electronic form. Any such

600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com

NEW YORK     CHICAGO     LOS ANGELES     PARIS



electronic documents shall be produced in accordance with the Delaware Court of Chancery Guidelines to Help Lawyers Practicing in the Court of Chancery, found here: https://courts.delaware.gov/Chancery/docs/Complete_Guidelines.pdf.

## IV.    Conclusion

For purposes of the foregoing demand, the Stockholders request that the Company provide or otherwise make available all such information up to the date in which the Company actually and fully complies with the demand and requests herein. The Stockholders further request that the Company provide or otherwise make available all additions, changes, and corrections to any of the requested information from the time of this demand to the time of any written confirmation that this inspection has concluded.

The Stockholders agree to bear all costs required to be paid by Section 220 that are incurred by the Company in connection with obtaining and furnishing the requested information and other materials. The Stockholders further agree to enter into a reasonable confidentiality agreement concerning the use of all documents produced by the Company pursuant to this demand.

We believe that this demand letter complies with the provisions of Section 220 in all material respects. If the Company believes this notice is incomplete or otherwise deficient in any respect, however, we request that you contact the undersigned immediately so that any alleged deficiencies may be addressed promptly.



Under Section 220, if you do not respond to this request within five (5) business days of the date of this demand letter, the Stockholders may apply to the Delaware Court of Chancery for an order compelling inspection. We look forward to your prompt response.

Sincerely,

Gustavo F. Bruckner
POMERANTZ LLP

and

Brett D. Stecker
SHUMAN, GLENN & STECKER

600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com

NEW YORK        CHICAGO        LOS ANGELES        PARIS

# EXHIBIT A



Roth Contributory IRA of
**ANTONIO DE LA CRUZ**
**CHARLES SCHWAB & CO INC CUST**
**ROTH CONTRIBUTORY IRA**

**Account Number**
3062

**Statement Period**
April 1-30, 2020

## Investment Detail - Bank Sweep

| Bank Sweep | Starting Balance | Ending Balance | % of Account Assets |
|---|---|---|---|
| Bank Sweep *,² | ▮ | ▮ | ▮ |
| **Total Bank Sweep** | ▮ | ▮ | ▮ |
| **Total Bank Sweep** | | ▮ | ▮ |

## Investment Detail - Equities



| Equities | Quantity | Market Price | Market Value / Cost Basis | % of Account Assets | Unrealized Gain or (Loss) | Estimated Yield | Estimated Annual Income |
|---|---|---|---|---|---|---|---|
| **SIX FLAGS ENTERTAINM ¹** SYMBOL: SIX | 11.1247 | 20.01000 | 222.61 / 757.26 | ▮ | (534.65) | 4.99% | 11.12 |

Schwab has provided accurate gain and loss information wherever possible for most investments. Cost basis data may be incomplete or unavailable for some of your holdings. Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.

Page 5 of 9



MS KATHLEEN A FRIEDHOFF                         Account Number: 7252

## YOUR CMA ASSETS

April 01, 2020 - April 30, 2020

| EQUITIES (continued) Description | Symbol | Acquired | Quantity | Unit Cost Basis | Total Cost Basis | Estimated Market Price | Estimated Market Value | Unrealized Gain/(Loss) | Estimated Annual Income |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| SIX FLAGS ENTMT CORP NEW | SIX | 05/28/19 | 100.0000 | 52.1700 | 5,217.00 | 20.0100 | 2,001.00 | (3,216.00) | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

5:44 ⏎



PORTFOLIO SUMMARY

| EQUITIES/OPTIONS | SYM/CUSIP | ACCT TYPE | QTY | PRICE | MKT VALUE | EST. ANNUAL INCOME | % OF TOTAL PORTFOLIO |
|---|---|---|---|---|---|---|---|
| �" | ▮ | ▮ | ▪ | ▬ | ▬ | ▬ | ▮ |
| ▀ | ▪ | ▮ | ▪ | ▬ | ▬ | ▬ | ▮ |
| Six Flags<br>Estimated Yield 6.20% | SIX | Margin | 48 | $20.01 | $960.48 | $59.51 | ▮ |
| **Total Securities** | | | | | ▮ | ▬ | ▮ |
| **Brokerage Cash Balance** | | | | | | | |
| **Total Priced Portfolio** | | | | | ▬ | | |

ACCOUNT ACTIVITY

| DESCRIPTION | SYMBOL | ACCT TYPE | TRANSACTION | DATE | QTY | PRICE | DEBIT | CREDIT |
|---|---|---|---|---|---|---|---|---|
| ▀ | | ▮ | ▪ | ▬ | | | | ▬ |
| ▀ | ▪ | ▮ | ▪ | ▬ | ▪ | ▬ | ▬ | |
| ▀ | | ▮ | ▪ | ▬ | ▪ | | | |
| ▀ | ▪ | ▮ | ▪ | ▬ | | | | ▬ |
| ▀ | ▪ | ▮ | ▪ | ▬ | ▪ | ▬ | | ▬ |
| ▀ | ▪ | ▮ | ▪ | ▬ | ▪ | ▬ | ▬ | |
| **Total Funds Paid and Received** | | | | | | | ▬ | ▬ |

    

# EXHIBIT B

**POWER OF ATTORNEY**

**KNOW ALL PERSONS BY THESE PRESENTS** that Antonio Dela Cruz does hereby make, constitute, and appoint the law firms of Pomerantz LLP and Shuman, Glenn & Stecker (the "Attorneys") as his true and lawful attorneys-in-fact, and in his name, place, and stead and on his behalf, and for his use and benefit, to make the *Demand to Inspect Books and Records Pursuant to 8 Del. C. § 220* on his behalf as a stockholder of Six Flags Entertainment Corporation ("Six Flags" or the "Company") in the accompanying demand ("Demand") from the Attorneys to the Company, to discuss the demands and factual assertions described in the Demand with any representative of the Company, or such other counsel as may be designated by them or the Company, to modify or supplement the demands set forth in the Demand, to reach such agreements with respect to the scope of the demand set forth in the Demand, and to commence any litigation on his behalf, as the Attorneys deem appropriate.

Antonio Dela Cruz further grants to the Attorneys full power to do and perform all and every act that they may legally do through an attorney-in-fact, and every proper power necessary to carry out the purposes for which this power is granted, with full power of substitution and revocation, hereby ratifying and affirming that which the Attorneys or their substitutes shall lawfully do or cause to be done by virtue of the power conferred herein upon them.

The rights, power, and authorities of said attorneys-in-fact herein granted shall commence and shall be in force and effect from the date hereof, and such rights and powers shall remain in full force and effect until Antonio Dela Cruz tenders a written notice of termination.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of May, 2020.

Antonio Dela Cruz

## POWER OF ATTORNEY

**KNOW ALL PERSONS BY THESE PRESENTS** that Kathleen Friedhoff does hereby make, constitute, and appoint the law firms of Pomerantz LLP and Shuman, Glenn & Stecker (the "Attorneys") as her true and lawful attorneys-in-fact, and in her name, place, and stead and on her behalf, and for her use and benefit, to make the *Demand to Inspect Books and Records Pursuant to 8 Del. C. § 220* on her behalf as a stockholder of Six Flags Entertainment Corporation ("Six Flags" or the "Company") in the accompanying demand ("Demand") from the Attorneys to the Company, to discuss the demands and factual assertions described in the Demand with any representative of the Company, or such other counsel as may be designated by them or the Company, to modify or supplement the demands set forth in the Demand, to reach such agreements with respect to the scope of the demand set forth in the Demand, and to commence any litigation on her behalf, as the Attorneys deem appropriate.

Kathleen Friedhoff further grants to the Attorneys full power to do and perform all and every act that they may legally do through an attorney-in-fact, and every proper power necessary to carry out the purposes for which this power is granted, with full power of substitution and revocation, hereby ratifying and affirming that which the Attorneys or their substitutes shall lawfully do or cause to be done by virtue of the power conferred herein upon them.

The rights, power, and authorities of said attorneys-in-fact herein granted shall commence and shall be in force and effect from the date hereof, and such rights and powers shall remain in full force and effect until Kathleen Friedhoff tenders a written notice of termination.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of May, 2020.

*Kathleen A. Friedhoff*

Kathleen Friedhoff

## POWER OF ATTORNEY

**KNOW ALL PERSONS BY THESE PRESENTS** that Kenny Rama does hereby make, constitute, and appoint the law firms of Pomerantz LLP and Shuman, Glenn & Stecker (the "Attorneys") as his true and lawful attorneys-in-fact, and in his name, place, and stead and on his behalf, and for his use and benefit, to make the *Demand to Inspect Books and Records Pursuant to 8 Del. C. § 220* on his behalf as a stockholder of Six Flags Entertainment Corporation ("Six Flags" or the "Company") in the accompanying demand ("Demand") from the Attorneys to the Company, to discuss the demands and factual assertions described in the Demand with any representative of the Company, or such other counsel as may be designated by them or the Company, to modify or supplement the demands set forth in the Demand, to reach such agreements with respect to the scope of the demand set forth in the Demand, and to commence any litigation on his behalf, as the Attorneys deem appropriate.

Kenny Rama further grants to the Attorneys full power to do and perform all and every act that they may legally do through an attorney-in-fact, and every proper power necessary to carry out the purposes for which this power is granted, with full power of substitution and revocation, hereby ratifying and affirming that which the Attorneys or their substitutes shall lawfully do or cause to be done by virtue of the power conferred herein upon them.

The rights, power, and authorities of said attorneys-in-fact herein granted shall commence and shall be in force and effect from the date hereof, and such rights and powers shall remain in full force and effect until Kenny Rama tenders a written notice of termination.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of May, 2020.

Kenny Rama

# EXHIBIT C

## VERIFICATION PURSUANT TO 10 *DEL. C.* § 3927

Pursuant to Delaware Supreme Court Administrative Order No. 3 and 10 *Del. C.* § 3927, I, Antonio Dela Cruz, declare that:

1.    I own common stock of Six Flags Entertainment Corporation ("Six Flags" or the "Company") and have been a stockholder during all relevant times.

2.    I have reviewed the *Demand to Inspect Books and Records Pursuant to 8 Del. C.* § 220 (the "Demand") prepared by my counsel.

3.    The statements in the Demand as to me and my actions are true and correct, and as to other statements of fact and matters set forth therein, are true and correct to the best of my knowledge, information, and belief.

4.    Proof of my ownership in Six Flags common stock is attached to the Demand.

5.    I each declare under penalty of perjury under the laws of the State of Delaware that the foregoing is true and correct.

Executed on the 11th day of May, 2020.

Antonio Dela Cruz

(Printed Name)

(Signature)

## **VERIFICATION PURSUANT TO 10 *DEL. C.* § 3927**

Pursuant to Delaware Supreme Court Administrative Order No. 3 and 10 *Del. C.* § 3927, I, Kathleen Friedhoff, declare that:

1.   I own common stock of Six Flags Entertainment Corporation ("Six Flags" or the "Company") and have been a stockholder during all relevant times.

2.   I have reviewed the *Demand to Inspect Books and Records Pursuant to 8 Del. C.* § 220 (the "Demand") prepared by my counsel.

3.   The statements in the Demand as to me and my actions are true and correct, and as to other statements of fact and matters set forth therein, are true and correct to the best of my knowledge, information, and belief.

4.   Proof of my ownership in Six Flags common stock is attached to the Demand.

5.   I each declare under penalty of perjury under the laws of the State of Delaware that the foregoing is true and correct.

Executed on the 11th day of May, 2020.

Kathleen Friedhoff

_____
(Printed Name)


*Kathleen A. Friedhoff*
_____
(Signature)

## **VERIFICATION PURSUANT TO 10 *DEL. C.* § 3927**

Pursuant to Delaware Supreme Court Administrative Order No. 3 and 10 *Del. C.* § 3927, I, Kenny Rama, declare that:

1.    I own common stock of Six Flags Entertainment Corporation ("Six Flags" or the "Company") and have been a stockholder during all relevant times.

2.    I have reviewed the *Demand to Inspect Books and Records Pursuant to 8 Del. C.* § 220 (the "Demand") prepared by my counsel.

3.    The statements in the Demand as to me and my actions are true and correct, and as to other statements of fact and matters set forth therein, are true and correct to the best of my knowledge, information, and belief.

4.    Proof of my ownership in Six Flags common stock is attached to the Demand.

5.    I each declare under penalty of perjury under the laws of the State of Delaware that the foregoing is true and correct.

Executed on the 11th day of May, 2020.

Kenny Rama

(Printed Name)

(Signature)