UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ANTONIO DELA CRUZ,**

   Plaintiff,

v.                                 No. 4:23-cv-0457-P

**REID-ANDERSON, ET AL.,**

   Defendants.

## OPINION & ORDER

The following Motions are before the Court: Nominal Defendant Six Flags, James Reid-Anderson, and Marshall Barber's Motion to Dismiss (ECF No. 53); Defendants David McKillips, Mark Kane, and Stephen Purtell's (the "Former Officers") Motion to Dismiss (ECF No. 52); and Richard Roedel, Kurt Cellar, Nancy Kresja, Jon Luther, and Stephen Owens (the "Former Directors") Motion to Dismiss (ECF No. 55). Having considered the Motions and applicable law, the Court concludes that the Motions should be and are hereby **GRANTED**.

## BACKGROUND

This putative stockholder derivative action arises from Defendants' failed attempt to expand their amusement parks into China. In 2018, Defendants Reid-Anderson, Barber, and the Former Officers and Directors (the "Individual Defendants") repeatedly maintained that their development and earnings schedule remained on-track. But the projected park opening schedule was allegedly in serious jeopardy as early as April 2018. A securities class action was filed in this Court[1] (the "Securities Action"), alleging Six Flags and its former officers made materially false and misleading statements about the development of

---

[1]*See Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. Six Flags Ent. Corp.*, 524 F. Supp. 3d 501 (N.D. Tex. 2021) (Pittman, J.), *rev'd and remanded sub nom., Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195 (5th Cir. 2023).

Six Flags-branded theme parks in China between April 2018 and February 2020. Following the commencement of the Securities Action, on May 14, 2020, Plaintiff asked to inspect Six Flags' books and records to investigate the same underlying allegations. Six Flags' production was complete on November 18, 2020, and Plaintiff took no further action for over two years.

Then, on January 18, 2023, the Fifth Circuit reversed this Court's dismissal of the Securities Action for failure to satisfy the pleading standard. Plaintiff sent a letter (the "Litigation Demand") to Six Flags' Board of Directors on February 1, 2023, demanding that it file claims against the Individual Defendants for breach of fiduciary duty in connection with the allegations in the Securities Action. Plaintiff demanded that the Board respond within six days and immediately seek tolling agreements from the potential defendants, as the claims might become time-barred as of February 20, 2023. Six Flags' Chief Legal Officer sent Plaintiff a letter explaining that the Board would consider the Litigation Demand at its next scheduled meetings on March 7–8, 2023. The letter also stated that Six Flags is endeavoring to obtain tolling agreements from the Individual Defendants. Six Flags did obtain tolling agreements, setting the tolling period to begin on February 19, 2023.

Plaintiff filed this action on February 21, 2023, arguing that the Board had constructively refused his demand by failing to obtain tolling agreements. Then, on March 7, 2023, the Board met to consider the Litigation Demand. None of the Board members who considered the demand were defendants in the Securities Action. Six Flags' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, attended the Board meeting to give an update on the Securities Action, discuss a related SEC investigation, and discuss a response to the Litigation Demand. In particular, Skadden advised the Board on the potential impact of pursuing the claims on the ongoing Securities Action, operating on the assumption that the allegations were meritorious. Skadden did not investigate the merits of the allegations. On March 8, 2023, the Board met in executive session to deliberate and vote on the Litigation Demand. Skadden attorneys did not attend the executive session.

2

Ultimately, the Board assumed for purposes of evaluating the demand that the allegations were meritorious but decided that it would not be in the company's best interest to pursue the claims. However, the Board ratified the tolling agreements that the company had secured. Six Flags' counsel then sent a Response Letter to Plaintiff on March 10, 2023, explaining the Board's process and reasons for deciding not to pursue the claims.

On August 22, 2023, Plaintiff refiled a Verified First Amended Stockholder Derivative Complaint in which he abandoned his constructive refusal allegations,[2] alleging instead that the Board wrongfully refused his Litigation Demand. Defendants filed their respective Motions to Dismiss on September 12, 2023, under FED. R. CIV P. 23.1 and 12(b)(6).

## LEGAL STANDARD

A shareholder has "no standing to bring [a] civil action at law against faithless directors and managers," because the corporation—not the shareholder—suffers the injury. *Lewis v. Knutson*, 699 F.2d 230, 237–38 (5th Cir. 1983) (quoting *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548 (1949)). "Equity as reflected in Fed. R. Civ. P. 23.1, however, allows him to step into the corporation's shoes and to seek in its right the restitution he could not demand on his own." *Id.* (cleaned up). Rule 23.1(b) addresses the pleading requirements for derivative actions and imposes a higher pleading standard than Rule 12(b)(6). Rule 23.1(b) requires:

> The complaint must be verified and must (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law; (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack, and (3) state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the

---

[2]Plaintiff reiterates that he has abandoned his constructive refusal allegation in his Response to Defendants' Motions to Dismiss. *See* ECF No. 62 at 25 n.10 ("Plaintiff's allegations of 'constructive' wrongful demand refusal are no longer relevant in light of the Refusal.").

3

shareholders or members; and (B) the reasons for not obtaining the action or not making the effort.

FED. R. CIV. P. 23.1(b). "Because Federal Rule of Civil Procedure 23.1 does not identify applicable substantive standards, the particularity of a plaintiff's pleadings is governed by the standards of the state of incorporation," here, Delaware. *Freuler v. Parker*, 803 F. Supp. 2d 630, 636 (S.D. Tex. 2011) (Harmon, J.), *aff'd*, 517 F. App'x 227 (5th Cir. 2013); *see also Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 92–99, (1991)). "Since plaintiff must satisfy the case or controversy requirement of Article III to properly invoke the court's jurisdictional powers, standing must be resolved as a preliminary matter." *Lewis*, 699 F.2d at 237. If a plaintiff satisfies the standing requirements of Rule 23.1, the court may proceed to a Rule 12(b)(6) analysis.

Rule 12(b)(6) allows a defendant to move to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019). "Further, all questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Id.* However, courts are not bound to accept as true legal conclusions couched as factual allegations. *See In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint must allege enough facts to move the claim across the line from conceivable to plausible. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ANALYSIS

Six Flags, Barber, and Reid-Anderson's Motion to Dismiss (ECF No. 53) raises a Rule 23.1 standing challenge, which is incorporated by reference in the Former Officers and Former Directors' Motions to Dismiss. *See* ECF Nos. 52 at 2; 55 at 2. All three Motions also ask the Court to dismiss Plaintiff's claims under Rule 12(b)(6), but the Court need not reach Defendants' 12(b)(6) arguments if it finds that Plaintiff lacks standing to bring this derivative suit. Accordingly, and pursuant to this Court's duty to resolve standing as a preliminary matter, *see Lewis*, 699 F.2d at 237, the Court addresses Defendants' Rule 23.1 arguments first.

In this case, because Six Flags is incorporated in Delaware, the particularity of Plaintiff's pleadings under Rule 23.1 is governed by Delaware law. *See Freuler*, 803 F. Supp. 2d at 637. "A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis,* 473 A.2d 805, 811 (Del. 1984), *abrogated on other grounds, Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Shareholder derivative suits restrict a board of directors' managerial authority. Therefore, as a prerequisite to a shareholder derivative suit, Delaware law requires an aggrieved shareholder to demand that the board take the desired action or show that such a demand would be futile. *See Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990). The board's rejection of a shareholder's demand will not be disturbed unless it is wrongful. *See id.* at 775. The demand requirement "insure[s] that a stockholder exhausts his intracorporate remedies." *Aronson,* 473 A.2d at 811–12. Pre-suit demand affords the board an opportunity to address the shareholder's concerns without litigation and to decide what corporate action, if any, is in the best interests of the corporation and *all* of its shareholders. *See Spiegel,* 571 A.2d at 773.

Here, because Plaintiff made a Litigation Demand on the Board, Plaintiff must show that the Board wrongfully refused to pursue the claim. *See id.* Under Delaware law, if a demand is rejected, "the board rejecting the demand is entitled to the presumption of the business judgment rule unless the stockholder can allege facts with particularity

5

creating a reasonable doubt that the board is entitled to the benefit of the presumption." *Grimes v. Donald*, 673 A.2d 1207, 1219 (Del. 1996), *abrogated on other grounds*, *Brehm*, 746 A.2d 244. The business judgment rule creates the "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson,* 473 A.2d at 812. Therefore, when a board refuses a demand, "the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel*, 571 A.2d at 777.

"[I]f the requirements of the traditional business judgment rule are met, the board's decision not to pursue the derivative claim will be respected by the courts." *Id.* (citing *Aronson,* 473 A.2d at 787). In such cases, "a board of directors' motion to dismiss an action filed by a shareholder, whose demand has been rejected, must be granted." *Id.* If courts would not respect the directors' decision not to file suit, then the demand would be an empty formality. *See id.*

Plaintiff argues that the Board acted unreasonably and in bad faith because it was advised by conflicted counsel in considering the Litigation Demand. *See* ECF No. 62 at 21. Specifically, Plaintiff argues the Board wrongfully refused the Litigation Demand because Skadden represented two of the individual Defendants (Reid-Anderson and Barber) along with Six Flags in the Securities Action. Plaintiff relies on *Stepak v. Addison*, an Eleventh Circuit case applying Delaware law in which the court held that the board wrongfully refused a litigation demand when it relied on the advice of conflicted counsel. *See* 20 F.3d 398 (11th Cir. 1994).

In *Stepak*, the law firm Troutman, Sanders, Lockerman & Ashmore represented the company's officers and directors in several criminal investigations related to the subject matter of the plaintiff's litigation demand. *See id.* at 403. Troutman Sanders also orchestrated an investigation and advised the board in considering a litigation demand arising from the same subject matter as the criminal investigations. *See id.* Over a two-month period, Troutman Sanders made presentations and provided the board with voluminous factual outlines, summaries, and legal analyses responsive to the allegations raised in the litigation

6

demand. *See id.* at 401. The company had no in-house legal staff; Troutman Sanders served as the company's general counsel. *See id.* at 407. Furthermore, when the board unanimously voted to refuse the litigation demand, Troutman Sanders attorneys were present during the deliberation and vote. *See id.* at 408. For these reasons, the Eleventh Circuit held that Troutman Sanders (1) had a conflict of interest by representing individual directors in related criminal investigations and (2) dominated the investigation and consideration of the litigation demand. *See id.* Accordingly, the court held that the board's actions were not protected by the business judgment rule and constituted wrongful refusal of the litigation demand. *See id.* The court explained:

> [I]f a shareholder pleads with sufficient particularity facts that, taken as true, show that a board's consideration of his demand was dominated by a law firm that represents or previously represented an alleged wrongdoer in criminal proceedings related to the very subject matter of the demand, then the shareholder raises a reasonable doubt that the board's rejection of his demand was an informed decision protected by the business judgment rule. In such a case, the shareholder's complaint is entitled, on a wrongful refusal theory, to survive a Rule 23.1 motion to dismiss.

*Id.* at 407. Thus, the Eleventh Circuit held that a shareholder's complaint survives a Rule 23.1 motion to dismiss when a law firm (1) has a conflict of interest and (2) dominates the investigation and consideration of a litigation demand. *See id.* at 403–404, 407. Applying this framework, the Court now considers whether Plaintiff has sufficiently alleged that (1) Skadden's representation of Barber and Reid-Anderson in the Securities Action created a conflict of interest and (2) Skadden dominated the Board's investigation and consideration of Plaintiff's Litigation Demand.

### A. Skadden Did Not Have a Conflict of Interest

Six Flags argues that Skadden did not have a conflict of interest in representing Barber and Reid-Anderson in the Securities Action. The Court agrees. Several facts distinguish the present case from the situation in *Stepak*.

*First*, Skadden's role in evaluating the Litigation Demand differed from Troutman Sanders' role in *Stepak*. In *Stepak,* Troutman Sanders

7

led a detailed investigation into the factual allegations of the litigation demand, delving into the merits of the allegations. *See id.* at 401. Accordingly, for Troutman Sanders' investigation to find that the allegations were meritorious, the firm would necessarily conclude that its clients were in the wrong—creating an issue of divided loyalties and raising significant conflict of interest concerns. Such an investigation might also be hampered by the firm's "continuing duty to preserve the secrets and confidences of its former clients." *Id.* at 406.

But Skadden, on the other hand, did not lead an investigation into the merits of the allegations. *See* ECF Nos. 57 at 19; 62 at 10. Rather, assuming the allegations were meritorious, Skadden advised the Board on several other considerations, including whether pursuing the claims would force the company to take a position inconsistent with its position in the Securities Action. *See* ECF No. 57 at 18. The Board ultimately concluded that if the company pursued the claims, "Six Flags would be required to take positions adverse to its defense in the Putative Securities Class Action." *Id.* Accordingly, without investigating the merits of the allegations, the Board concluded that pursuing the claims was not in the best interest of the company. *See id.* at 12. Skadden was well-suited to advise the board on this issue because it was counsel of record in the Securities Action. *See* ECF No. 57 at 18. And because Skadden did not lead an investigation into the merits of the allegations, the issues of divided loyalty and duty of confidentiality in *Stepak* are inapplicable. *See In re Consumers Power Co. Derivative Litig.*, 132 F.R.D. 455, 478 (E.D. Mich. 1990) (Pepe, J.) ("[E]ven if [counsel] had an inappropriate bias in favor of the individual directors, the fact that the committee chose to presume the legitimacy of the merits of the claims against the directors blunted any effect such a bias would have.").

*Second*, the interests of Six Flags, Barber, and Reid-Anderson were aligned in the Securities Action that supposedly created the conflict. In *Stepak*, Troutman Sanders separately represented individual board members in criminal proceedings arising from the same subject matter as the demand. *See Stepak,* 20 F.3d at 403. Here, Skadden represented Barber and Reid-Anderson *along with Six Flags itself* in a civil suit in which the three Defendants' interests were aligned. *See* ECF No. 67 at

8

5–6. Because no conflict appears to exist with respect to the company and Barber and Reid-Anderson in the Securities Action, there is no reason to conclude that a conflict exists in reviewing the Litigation Demand, which involved the same subject matter.

*Third*, unlike in *Stepak*, Skadden is not representing any of the alleged wrongdoers in criminal proceedings—which would more easily give rise to potential conflicts of interest. *See Stepak,* 20 F.3d at 405 (explaining the possibility of bias in conflicted counsel's legal advice is "especially true when the prior representation was in relation to criminal proceedings"); *see also Starkes v. Flechner*, No. 11-62220-CIV, 2012 WL 1156404, at *2 (S.D. Fla. Apr. 6, 2012) (Cohn, J.) (distinguishing case from *Stepak* because "there are no criminal proceedings, only civil lawsuits"); ABA Model Rules, Comment 23 to Rule 1.7 ("The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant. On the other hand, common representation of persons having similar interests in civil litigation is proper if the requirements of [ABA Model Rule 1.7] are met.").

For these reasons, the Court finds that Skadden did not have a conflict of interest that satisfies the first element of the *Stepak* test.

### B. Skadden Did Not Dominate the Investigation and Consideration of Plaintiff's Litigation Demand

Even if Skadden had a conflict of interest, Plaintiff has not alleged with particularity that Skadden dominated the board's consideration of the Litigation Demand. Although Plaintiff maintains that "this is a *Stepak* case," Plaintiff's Response makes only a passing mention of the "domination" element of the *Stepak* analysis. ECF No. 62 at 22–23. And once again, Skadden's role in this case differs substantially from that of Troutman Sanders in *Stepak*.

In *Stepak*, Troutman Sanders led a months-long investigation and "provided the Board with ten volumes of detailed factual outlines and summaries, supporting documentation and legal analyses responsive to each specific area raised by Stepak." *Id.* at 401. Troutman Sanders

9

presented these factual findings and legal analyses to the board, and Stepak alleged that "[t]he Board members were merely passive recipients of the product of an 'investigation' orchestrated by [Troutman Sanders]." *Id.* at 403. Furthermore, the company "had no in-house legal staff . . . . Troutman Sanders served as [the company's] general counsel." *Id.* at 407. Then, when the board deliberated and voted not to pursue the claims, "Troutman Sanders attorneys were present during the deliberation and vote." *Id.* at 408.

But here, unlike in *Stepak*, Skadden did not investigate the merits of the allegations and did not furnish the Board with voluminous factual and legal analyses responsive to the demand. *See* ECF Nos. 57 at 18. Instead, Skadden presented various considerations to the Board under the assumption that the allegations were meritorious. See ECF No. 67 at 7. Accordingly, Skadden did not "dominate" any investigation. *See Stepak,* 20 F.3d at 411 ("We do not mean to imply that the outside directors either could not have or should not have *heard from* Troutman Sanders . . . . [T]here is a significant difference between hearing from Troutman Sanders as part of the investigation and having the firm conduct the investigation."). Nor did Skadden dominate the Board's consideration and deliberation of the Litigation Demand. In fact, Skadden attorneys did not attend the Board's executive session in which it deliberated and voted to refuse the demand. *See* ECF No. 57 at 18. Rather, Six Flags' in-house counsel attended the Board meetings, presented to and advised the Board regarding the Litigation Demand, and attended the executive session, deliberation, and vote without Skadden attorneys. *Id.* at 4.

Plaintiff seemingly argues that the Board's decision to assume the allegations were meritorious and forego an investigation *supports* the conclusion that Skadden dominated the Board's consideration of the Litigation Demand. *See* ECF No. 62 at 10 ("Given that the Board received a presentation and legal advice from non-independent counsel, it comes as no surprise that the Board decided *not to investigate at all*.") (emphasis in original). But it is well-established that "there is no prescribed procedure that a board must follow" in considering a litigation demand. *Levine v. Smith*, 591 A.2d 194, 214 (Del. 1991),

10

*abrogated on other grounds, Brehm*, 746 A.2d 244. And "Delaware law does not require a board to conduct a substantive, formal investigation into a demand's allegations." *Gould on behalf of Bank of Am. v. Moynihan*, 275 F. Supp. 3d 487, 495 (S.D.N.Y. 2017) (Caproni, J.).

Indeed, a board's decision to refuse a litigation demand that would force the company to take inconsistent positions is routinely upheld as an exercise of business judgment. *Green v. Paz*, No. CV 20-324-LPS, 2021 WL 11661345, at *11 (D. Del. Mar. 31, 2021) (Stark, J.) ("Taking steps that would hurt Express Scripts in [ongoing] litigation could quite reasonably have been seen as not being in the companies' interests"); *In re Merrill Lynch & Co., Inc., Sec., Derivative & ERISA Litig.*, 773 F. Supp. 2d 330, 348–49 (S.D.N.Y. 2011) (Rakoff, J.), *aff'd sub nom.*, *Lambrecht v. O'Neal*, 504 F. App'x 23 (2d Cir. 2012) (holding business judgment rule protects board's refusal of demand because pursuing claims could be deemed an admission of liability and could be used against the company in pending litigation); *Morefield v. Bailey*, 959 F. Supp. 2d 887, 899 (E.D. Va. 2013) (Lee, J.) (holding business judgment rule protects board's decision to refuse litigation demand because, among other things, the board considered the "potential impact on a pending securities fraud action"); *Furman v. Walton*, No. C 06-3532 SBA, 2007 WL 1455904, at *5 (N.D. Cal. May 16, 2007) (Armstrong, J.), *aff'd*, 320 F. App'x 638 (9th Cir. 2009) (holding business judgment rule protects board's decision to refuse litigation demand because pursuing the claims "would in effect be an admission" in a pending securities action).

Further, the impact of pursuing the claims on the Securities Action was only one of several considerations the Board identified in its reasons for refusing Plaintiff's Litigation Demand. *See* ECF No. 51-2 at 2–4. The Board also considered (1) the likelihood of recovering the amount of a judgment against the company, (2) the potential disruption to the company's business if resources are diverted toward pursuing litigation, (3) the costs of commencing litigation, (4) the fact there has been a turnover in company management and the Board, and (5) the fact the company has secured tolling agreements to preserve optionality. *See id.* Thus, the Board's decision to forego an investigation and assume the

11

claims were meritorious in considering the Litigation Demand does not support the conclusion that Skadden dominated the Board's consideration of the demand.

For these reasons, the Court finds that Skadden did not dominate the Board's consideration of the Litigation Demand, and thus, Plaintiff fails to satisfy the second element of *Stepak*. Because Plaintiff fails both prongs of the *Stepak* test, Plaintiff has not "raise[d] a reasonable doubt that the board's rejection of his demand was an informed decision protected by the business judgment rule." *Stepak*, 20 F.3d at 407.

Accordingly, Skadden's participation in the Board meetings does overcome the presumption that the Board acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. Since Plaintiff has not alleged facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the presumption, Defendants' Rule 23.1 Motions to Dismiss must be **GRANTED**.

## CONCLUSION

Having concluded that Plaintiff does not satisfy the heightened pleading standard of Rule 23.1, the Court concludes that Defendants' Motions to Dismiss (ECF Nos. 52, 53, 55) should be and are hereby **GRANTED**. The Court need not reach Defendants' Rule 12(b)(6) arguments. Accordingly, this case is **DISMISSED with prejudice**.

**SO ORDERED** on this **12th day of January 2024**.

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE